## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **GOLDEN GATE COMMUNICATIONS, LLC,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **Case No. 3:22-cv-2767** |
| **ALLIOS, INC.,** | § § | |
| **Defendant.** | § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Plaintiff Golden Gate Communications, LLC ("Plaintiff" or "Golden Gate"), by and through its attorneys, and files this Original Complaint against Defendant Allios, Inc. ("Defendant" or "Allios") and in support thereof respectfully alleges and shows the Court as follows.

### I.        NATURE OF THE ACTION

1.    This is an action arising from Allios's failure to pay Golden Gate's invoices for goods provided pursuant to the parties' contractual agreement.

2.    Golden Gate is a supplier of telecommunications equipment.

3.    Allios is a telecommunications services provider.

4.    Golden Gate and Allios entered into an agreement under which Golden Gate agreed to supply certain goods pursuant to purchase orders issued by Allios, and in exchange Allios agreed to pay all properly invoiced or billed amounts within 30 calendar days after receipt of those invoices or billing statements.

5.    Throughout 2021 and 2022, Allios sent Golden Gate hundreds of purchase orders for goods, and Golden Gate provided the requested goods and issued corresponding invoices to Allios in accordance with the parties' agreement.

6.    However, to date Allios has failed to pay 403 invoices issued by Golden Gate, and there remains an unpaid balance in the amount of $1,252,580.11.

## II.    THE PARTIES

7.    Plaintiff Golden Gate Communications, LLC is, and at all times mentioned herein was, a limited liability company organized and existing under the laws of California with its principal place of business at 621 Dolores Drive, Santa Barbara, California 93109.

8.    Upon information and belief, Defendant Allios, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at 2051 Midway Road, Lewisville, Texas 75056.

## III.    JURISDICTION & VENUE

9.    This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Golden Gate and Allios and the amount in controversy exceeds $75,000, exclusive of interests and costs.  Golden Gate is a citizen of California for purposes of diversity jurisdiction because it is incorporated in California, its members are citizens of California, and its principal place of business is in California.  Allios is a citizen of Delaware and Texas for purposes of diversity jurisdiction because it is incorporated in Delaware and its principal place of business is in Texas.

10.    This Court has personal jurisdiction over Allios because Allios has its principle place of business in Lewisville, Texas and systematically conducts and transacts business in Texas. In addition, Allios entered into a contract where one party was to perform the contract in whole or

in part in Texas and the events giving rise to Golden Gate's causes of action took place in this District.  Further, Allios consented to being subject to this Court's personal jurisdiction in the parties' agreement.  Specifically, the Master Supplier Agreement entered into by Allios and Golden Gate provides that all disputes relating to that agreement "shall be resolved exclusively in the State of Texas."

11.    Venue is proper in this District.  As stated above, the Master Supplier Agreement entered into by Allios and Golden Gate provides that all disputes relating to that agreement "shall be resolved exclusively in the State of Texas."  In addition, Allios has its principle place of business in this District and regularly conducts business in the District.

## IV.    FACTUAL BACKGROUND

**A.    Golden Gate agreed to supply goods to Allios, and Allios agreed in exchange to pay Golden Gate's invoices.**

12.    Golden Gate is a national supplier of telecommunications equipment, including but not limited to pipes, tubing, fiber optic cables, cable adapters and clamps, cable support brackets, cable racks and enclosures, cable connectors, cable assemblies, antennas and antenna guards, circuit breakers and breaker panels, grounding equipment, and other goods used within the telecommunications industry.  Golden Gate supplies equipment from over 100 manufacturers.

13.    Allios, along with a related company called Nexius Solutions, Inc. ("Nexius"), provides telecommunications services to businesses, including but not limited to setting up equipment to establish fiber optic and cellular phone networks.  Allios employs the logistics and warehousing divisions of Nexius.

14.    On January 6, 2021, Golden Gate and Allios entered into a Master Supplier Agreement (the "Agreement"), whereby Golden Gate agreed to provide Allios certain goods

pursuant to purchase orders issued by Allios, and in exchange Allios agreed to pay all properly invoiced or billed amounts.

15.     Specifically, Page 1 of the Agreement states, "Allios desires to engage Seller to provide certain Goods in accordance with the terms and conditions of this Agreement. Such Goods are to be procured and provided pursuant to purchase orders issued by Allios and accepted in writing by [Golden Gate], and after acceptance of each Order in writing by [Golden Gate], [Golden Gate] is willing to procure and provide such Goods pursuant to the terms herein."

16.     In addition, Section 5.1 of the Agreement states, "[Allios] shall pay all properly invoiced/billed amounts due to [Golden Gate] within thirty (30) calendar days after receipt of such invoice or billing statement."

17.     Further, Section 22(c) of the Agreement states, "Failure of Allios or [Golden Gate] to take action for nonperformance or for any breach of this Agreement shall not be construed as a waiver or relinquishment of any such term or condition, or of the right to enforce such term or condition in the event of any future or recurring breach."

**B.     Golden Gate provided goods to Allios, but Allios failed to pay hundreds of invoices and now owes Golden Gate over $1.2 million.**

18.     Throughout 2021 and 2022, Allios sent Golden Gate purchase orders for goods, and Golden Gate satisfied its contractual obligations by providing the requested goods and issuing corresponding invoices to Allios in accordance with the parties' agreement.

19.     But in late 2021 and early 2022, Allios stopped paying invoices issued by Golden Gate.

20.     Golden Gate reached out to Allios several times about unpaid invoices.  When Allios did not pay the outstanding balance, Golden Gate placed a hold on Allios's account on or around April 25, 2022—preventing Allios from ordering more goods from Golden Gate.

21.     As a result of that hold, Allios made payments on a few of the outstanding invoices. Accordingly, Golden Gate removed the hold and resumed shipments of goods upon receipt of purchase orders from Allios.  But Golden Gate continued to request payment of the previous unpaid invoices, even as Golden Gate continued issuing invoices for new purchase orders received from Allios.

22.     From April through November of 2022, Golden Gate made several additional requests to Allios for payment on the past due invoices.  As part of those requests, Golden Gate sent Allios the total outstanding balance as well as an account of each individual unpaid invoice.

23.     Allios acknowledged the unpaid invoices in multiple email responses and indicated it would make payments to address the outstanding balance.  But Allios failed to pay and the outstanding balance continued to grow—at one point, Allios owed Golden Gate over $1.39 million.

24.     As of the date of this Complaint, there remain 403 unpaid invoices totaling $1,252,580.11, as listed in Exhibit 1 attached hereto.

25.     All of the unpaid invoices are at least 30 days past due.  The earliest unpaid invoice is dated December 14, 2021.  Pursuant to Section 5.1 of the Agreement, payment on that invoice was due January 13, 2022.  Despite Golden Gate's many demands for payments, Allios has not paid the outstanding balance.

## V.     CAUSES OF ACTION

### A.     Count I: Breach of Contract

26.     Golden Gate reasserts and incorporates by reference each and every allegation set forth in this Complaint as if fully set forth herein.

27.     Golden Gate and Allios entered into the Master Supplier Agreement on January 6, 2021.

28.     The Agreement is a valid and enforceable contract between Golden Gate and Allios, as it was premised on the valid offer, acceptance, and agreement between Golden Gate and Allios as to all essential terms, and it was supported by valuable consideration.

29.     Golden Gate has fully performed and/or tendered performance of all of its obligations under the Agreement by providing the goods requested by Allios through purchase orders and issuing proper and timely invoices to Allios, and any conditions precedent to final payment and performance by Allios have occurred or have otherwise been satisfied or waived.

30.     Despite demands from Golden Gate, Allios has failed and refused to pay the full amounts due and owing to Golden Gate under the Agreement and pursuant to the invoices listed in Exhibit 1.

31.     By accepting the goods but refusing to satisfy its payment obligations, Allios has materially breached the Agreement.

32.     As a direct and proximate result of Allios's breach, Golden Gate has been deprived of the benefits of its contract with Allios and has incurred actual and consequential damages in an amount to be proven at trial but not less than $1,252,580.11.

**B.      Count II: Quantum Meruit**

33.     Golden Gate reasserts and incorporates by reference each and every allegation set forth in this Complaint as if fully set forth herein.

34.     Allios requested the goods, and the charges for the goods, as reflected in the invoices issued by Golden Gate to Allios (listed in Exhibit 1), were reasonable.

35.     Allios accepted and retained the goods, Golden Gate is entitled to recover the reasonable value of the goods it provided to Allios, and it would be improper to permit Allios to retain and enjoy the benefit of goods provided by Golden Gate pursuant to the Agreement without Allios paying in full for those goods.

36.     Despite Golden Gate properly invoicing Allios and despite written demands for payment by Golden Gate, Allios has failed to pay the amounts due and owing to Golden Gate for the value of the goods provided.

37.     Accordingly, in the alternative to its other claims against Allios, Golden Gate seeks restitution from Allios for the goods Golden Gate provided in an amount to be proven at trial but not less than $1,252,580.11.

## C.     Count III: Unjust Enrichment

38.     Golden Gate reasserts and incorporates by reference each and every allegation set forth in this Complaint as if fully set forth herein.

39.     At the knowledge, request, and insistence of Allios, Golden Gate furnished and provided certain goods.

40.     In doing so, Golden Gate conferred valuable benefits upon Allios, and Allios was enriched by those benefits.

41.     Allios accepted and retained the goods, and has full knowledge of the benefits conferred on it by Golden Gate.

42.     Allios has failed and refused to pay Golden Gate for the goods it received.

43.     Under these circumstances, Allios has taken undue advantage of Golden Gate, and it would be inequitable for Allios to retain the benefits of the goods in light of Allios's failure and refusal to compensate Golden Gate for its efforts in providing the goods.

44.     The circumstances are such that equity and good conscience make it inequitable for Allios to retain the benefits of the goods Golden Gate provided without Allios making full payment for those goods, and no justification exists for Allios's retention of those benefits without paying Golden Gate.

45.    As a direct and proximate result of Allios's unjust retention of the benefits conferred by Golden Gate, Golden Gate has been damaged in an amount to be proven at trial but not less than $1,252,580.11.

46.    Accordingly, in the alternative to its other claims against Allios, Golden Gate seeks restitution from Allios of all such benefits in an amount to be proven at trial but not less than $76,610.

## VI.    ATTORNEY'S FEES

47.    Golden Gate reasserts and incorporates by reference each and every allegation set forth in this Complaint as if fully set forth herein.

48.    Due to the actions of Allios, Golden Gate has been required to retain the services of the law firm of Haynes and Boone, LLP.  Golden Gate has agreed to pay Haynes and Boone, LLP a reasonable fee for its services necessarily rendered and to be rendered in this action. Pursuant to Section 38.001 of the Texas Civil Practices & Remedies Code, Golden Gate is entitled to an award of its reasonable attorney's fees against Allios in an amount to be established at trial.

## VII.    JURY DEMAND

49.    Golden Gate hereby demands a trial by jury on all issues so triable.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Golden Gate respectfully requests that this Court grant the following relief:

1.    Judgment finding that Allios has breached the January 6, 2021 Master Supplier Agreement, or in the alternative, that Allios is liable to Golden Gate under theories of quantum meruit or unjust enrichment;

2.    Judgment awarding Golden Gate all damages it has sustained as a result of Allios's breach of contract, or in the alternative, awarding Golden Gate damages under theories of quantum meruit or unjust enrichment;

3.    Judgment awarding Golden Gate all reasonable and necessary attorney's fees and expenses incurred in this matter pursuant to Section 38.001 of the Texas Civil Practices & Remedies Code;

4.    Judgment awarding Golden Gate pre- and post-judgment interest in the amount allowed by law;

5.    Judgment awarding Golden Gate all costs of court; and

6.    All such and other further relief as is equitable and just, both at law and in equity, as Golden Gate may show itself justly entitled.


Dated: December 13, 2022                    Respectfully submitted,

                                            */s/ J. Nicholas Bunch*
                                            J. Nicholas Bunch
                                            State Bar No. 24050352
                                            nick.bunch@haynesboone.com
                                            Neil Issar
                                            State Bar No. 24102704
                                            neil.issar@haynesboone.com
                                            HAYNES AND BOONE, LLP
                                            2323 Victory Avenue, Suite 700
                                            Dallas, Texas 75219
                                            Tel: 214-651-5000
                                            Fax: 214-651-5940

                                            **ATTORNEYS FOR PLAINTIFF
                                            GOLDEN GATE COMMUNICATIONS,
                                            LLC**